We'll hear oral argument now in the case of United States v. Broadfield. Ms. Clark. Good morning, Your Honors, and may it please the Court. I'm Sarah Clark and I represent the defendant, Brian Broadfield, here. The District Court has a few fundamental responsibilities. It has to consider all of the evidence, it has to get the facts right, and it has to get the law right, and the District Court here fell short on all three counts. So on the facts, the District Court misread the medical evidence and it attributed offenses to Mr. Broadfield that he had never committed. And on the law, the District Court... Ms. Clark, let's assume the District Judge made one or more errors. My principal question for you is whether that matters. Is your client now vaccinated against COVID-19? That I don't know. Is he eligible for a vaccine? Eligible? I don't know for sure. Everybody in the United States is eligible, right? I read that the federal prison system is vaccinating prisoners. The premise of this request for release is your client's risk of something where he can now get rid of that risk. So my question is, does anything else in this case matter? If your client either has been vaccinated or can get vaccinated, why does anything else matter? So a couple points in response to that. So I guess my first point would just be that none of this was before the District Court, and the question here is whether the District Court's... Of course not. But one of the questions that we have to decide in every case is whether there's harmless error. It seems clear the District Court made two errors, but do they matter? We have to figure that out. And they do matter. I would just reiterate again, I mean, the government points on it in its own way. Why do they matter if your client's eligible for the vaccine? Well, I guess one... So far as I can tell, there is no basis of his request for compassionate release other than his risk of a disease that he is no longer at risk of because everybody's eligible. So these are questions that the District Court could address on remand, and we certainly don't dispute that these kinds of inquiries would be relevant there, but we think the question is a little more complicated than a simple on-off switch. Mr. Broadfield, maybe he is vaccinated, but the pandemic is ongoing, there are variants, and it's really a question for the District Court. That has nothing to do with whether he's eligible for the vaccine. We agree that... We are not a court of medicine. We're not going to say, gee, the FDA made a mistake in licensing the vaccine. There are very good data. This is not the kind of thing one contests in a proceeding like this. Now, if you were saying that he has a medical condition that contraindicates the vaccine, that would be interesting, but I take it you're not so arguing. No, no, that's not our position. Our position is that the District Court can assess if Mr. Broadfield is in fact vaccinated or will be vaccinated by the time the District Court is addressing this question. It can assess any remaining... I want to be very clear. I don't care whether he's vaccinated. If he's eligible and he chooses not to get the vaccine, that's his choice, but I don't see how somebody, a federal prisoner, can say, I have chosen not to get the vaccine, therefore the prison system should let me out. That's a perfect non sequitur. And all of this is perfectly acceptable for the return to my first point that this is really something that... It sounds like you're saying we should just never consider harmless error. If we identify an error, we should just automatically remand. And it seems to me we do consider harmless error. We agree that you consider harmless error, and the government certainly engages on that point as we do in our briefs, but the vaccine situation is a little bit different. I think this court is not as well situated as the District Court to, first of all, find the fact as to whether Mr. Broadfield has... District Courts do not make findings of fact on the effectiveness of vaccines. The FDA makes that, or maybe the Centers for Disease Control. But they could make a finding, the District Court could make a finding of fact as to whether Mr. Broadfield has declined the vaccine or whether he has received it. Look, if there is a but the prison refuses to allow me to be vaccinated, that would be a very interesting dispute. But it sounds like you haven't investigated this question at all. I mean, it struck me that these briefs are all filed after vaccines are available, and they just ignore the question. It's not something that can be ignored. This court's precedents direct the review of the District Court to focus and indeed limit itself to the District Court's inquiry, the information that it has before it. Ms. Clark, can I ask you a question? I have a question that's a little related topic but a little bit different. The weapons. The District Court clearly made a mistake when he mentioned weapons, but why is that not harmless error under the District Court's otherwise what I think is a thorough 3553 analysis where the District Court cites several factors upon which your client should not be released? He clearly made a mistake when he mentioned weapons, but why should that not be harmless error? We think that factor, the weapons fact finding, was particularly salient to the District Court's finding of dangerousness and was in fact the only fact that the District Court purported to find that went to the question of whether, certainly the question of whether Mr. Broadfield was violent, the rest of his background. He's a career offender, counsel. Isn't he? That's true, but he does have prior drug offenses, and he was sentenced as a career offender. He's a career offender. But we think there is a meaningful difference between weapons and other violent offenses and drug offenses and that District Court sort of had this hyper salient fact before it that this was inaccurate. But a need to protect the public, the judge considers and he's a career offender. It doesn't seem to be too much of a problem denying a release. It's certainly possible that the District Court would have been in favor of the release of Mr. Broadfield, but I think there's a reasonable likelihood that the weapons offense, which was, I believe, early in the District Court's analysis, if I remember incorrectly, played a significant role such that we should give the District Court a chance to analyze Mr. Broadfield's circumstances without that fact. He had disciplinary infractions while he was in prison, apart from any weapons. Right. So, these are factors that the District Court did mention in its decision, but we still believe that the weapons offense played a likely an outsized role and that the best approach would be to give the District Court a chance to redo its analysis on the correct facts. And notice that I'm into my rebuttal, so if there are no further questions, I'll reserve the remainder of my time for rebuttal. Certainly, Ms. Clark. Mr. Hollingshead Cook. May it please the Court. I'm Keith Cook on behalf of the United States. This Court should affirm the District Court because it reasonably denied Mr. Broadfield's motion for compassionate release. It did not abuse its discretion in denying that motion. More specifically, the District Court reasonably determined both that Broadfield provided insufficient evidence of extraordinary and compelling reasons for release and also that Broadfield would pose a potential danger should he be released. Mr. Cook, what do we know about the question whether federal prisoners are eligible to be vaccinated? Yes, Your Honor, and I'll start out by saying, of course, that's not in the record before this Court that was developed at the District Court. This is not something that is a matter of record evidence, right? What is the matter of public record? What is it? The vaccine is widely available to prisoners in the BOP, Your Honor, and I can say that... No, they must have a published stated policy. If they don't have one, that would be a surprise to me, but maybe they don't. Do they have a publicly stated policy on availability of the vaccines to prisoners? Your Honor, I believe they do. Unfortunately, I can't say with certainty that they do. It's obvious that the counsel for both sides are not prepared for this question, even though one might think this is the central question in the case. I would like counsel, preferably in consultation with one another, to provide us within seven days with the Bureau of Prison's policy about the availability of vaccines to federal prisoners. If they don't have a policy, we would like to know that, too. Yes, Your Honor, and I would be happy to coordinate with Ms. Clark to accomplish that. I could say, to the extent that the Court is interested to know, I have learned from the Bureau of Prisons that Mr. Broadfield has declined to be vaccinated. He refused to be vaccinated in May when the Johnson & Johnson vaccine was offered. That's fine. As I said to Ms. Cook, he can make his own choices, but he can't say, I have decided to remain at risk of COVID, and therefore, I should be let out altogether. Yes, Your Honor. Yes, Your Honor. Now, Mr. Cook, I've got one serious question about what the district judge said in this case. Everybody agrees that he made a mistake about whether Broadfield has been convicted of weapons offenses. I'm also worried about his statement, and I quote, The Court is unable to determine that defendant is not a danger to his community, as is required under the Compassionate Release statute, close quote. Does any part of the statute make such a finding essential? Only to the extent that the statute incorporates the policy statement. Of course. The answer is no. No part of the statute does any such thing. So we have a judge who's not only mistaken about what Broadfield was convicted of, but he's also mistaken about the content of the governing statute. Now, maybe one can say that's all harmless, but, you know, one serious error is tough. Two serious errors is double tough. Yes, Your Honor, and I would respond by saying that, unlike other cases where district courts have found themselves bound by the policy statement in deciding what can constitute extraordinary and compelling reasons, in this case, the district court applied that policy statement. That's not what the judge said. The judge didn't say, the policy statement says this. The judge attributed this choice to the statute that is to Congress, and it just isn't there. We expect judges to be able to quote statutes correctly. Yes, Your Honor, and that's correct. I believe the district court was perhaps summarizing an interpretation of the statute because it refers to the policy statement. Of course, this court has made clear after gun that that policy statement is not binding, but nevertheless, in other cases, for example, in the Musgraves case, this court has found a district court's similar application of that policy statement to be sound reasoning, and that's reasonable based on the fact that this portion of the policy statement, whether the defendant poses a danger, significantly overlaps with the 3553A factors or analysis, which is, in fact, required by the compassionate release statute, and that's especially reasonable here where the danger that Broadfield would pose should he be released is so overwhelming. We're talking about someone with a long criminal history. He's a career offender for serious offenses. Many of them are drug offenses involving methamphetamine. He was on parole for state methamphetamine convictions, and he had only been released months earlier before he had engaged in this criminal behavior where he was a central figure in a conspiracy involving a couple dozen people to manufacture and distribute methamphetamine, itself an addictive poison, and he produced that in a dangerous way that ignited a fire in a motel where there were children present and other occupants of the hotel. So here where the proof is so clear that the defendant poses a danger should he be released, the incorporation of this aspect of the policy statement, the dangerousness analysis, is harmless. It is essentially in line with the 3553A factors, and to the extent that the defense focuses on a lack of violence in the overly narrow view of danger, in order to argue that he's not a danger because he doesn't have a weapons offense, he doesn't have a record of violence, it just constrains the definition of danger. It's an overly narrow definition of danger. So given all of those facts, it's reasonable for the district court to include and be guided by the policy statement, even if it appears that the district court elevated that consideration, the dangerousness, over the other 3553A factors. Again, it's similar to this court's reasoning in the Musgraves' opinion, and if I could respond to one point that the defense makes in its reply brief regarding Musgraves, it argues that this portion of the Musgraves' opinion is victim, and that's not so. Musgraves points out that the defendant failed to challenge this portion of the district court's opinion in Musgraves, and that doomed his appeal. This analysis, the dangerousness analysis, the 3553A analysis, is independently sufficient. So that made it an independent basis for this court's opinion in Musgraves. If I could turn to the extraordinary and compelling prong of the district court's analysis in this case, I would point out that the defense relied primarily on asthma and the effects of COVID and risks of COVID as a result of asthma. But I would point out that the district court engaged in that issue. They considered the records that the defendant had submitted, and those records included more than 300 pages of BOP medical records going back to 2013, listing health problems that the defendant had had since 2013, and they don't reference asthma. The district court addresses the only appearance of asthma in all of those records, and as it relates to the other conditions that the defendant has raised, COPD, smoking, I would note that in his counseled amended motion, he says, when he's describing the relevant conditions, he says asthma and hypothyroidism are the relevant ones. The other ones are other ailments not considered as risk factors, according to the CDC, for increasing his risk of COVID-19. So to the extent the defense faults the district court for not addressing COPD or smoking or any other conditions, it's because the defense head itself told the court that those weren't relevant. They were of minimal risk to the defense. So, based on all of that, Your Honor, the government believes that the district court reasonably denied Rod Field's motion and respectfully requests that this court affirm the district court. Thank you, counsel. Anything further, Ms. Clark? Yes, I'll just make a few brief points. So, I guess first I'll just note that I believe now the government concedes that the district court did abuse its discretion and that the dispute really is about whether its errors were harmless. So, the government started by saying there was no abuse of discretion. I'll note on the asthma that the district court didn't engage with all the evidence of asthma, including a statement from Mr. Rod Field's medical provider that he was having an asthma flare-up, nor did the district court engage with the robust evidence of asthma symptoms in the lengthy medical records. So, we disagree that the district court fully engaged with and condition. I'll note on the argument that Mr. Rod Field's counseled motion below didn't raise all these conditions. I mean, it incorporated his pro se filings, which actually went into quite a bit of detail about all of these various conditions and provided the district court with a lot of material, none of which it engaged with or acknowledged. So, we think there it fell short of its obligations as well. And I would just finally note that on Musgraves, the defendant there didn't challenge the dangerousness question either, which is why we described the portion of the opinion that addressed harmless error as dicta, because it wasn't necessary for the court's conclusion. So, with those points said, if there are no further questions, we respectfully request that the court vacate the opinion of the district court and remand for further proceedings. Thank you, Ms. Clark, and we appreciate your willingness to accept the court's appointment in this case. The case is taken under advisement.